[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 17, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14411
Non-Argument Calendar
_____

D. C. Docket No. 05-01767-CV-T-27-TBM

MARK DANIEL GROSS,

Plaintiff-Appellant,

versus

SHERIFF BOB WHITE,
TRACY MCKAY,
Doctor, Pasco County Jail,
STATE OF FLORIDA,
NURSE CARR,
Pasco County Jail,
CAPTAIN HEAD,
Pasco County Sheriff, et al.,

Defendants-Appellees,

JOHN DOES, et al.,                                        Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 17, 2009)

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Mark Daniel Gross, a Florida state prisoner proceeding pro se, was assaulted

by a fellow inmate while Gross was a pretrial detainee at the Pasco County Jail.

The assault injured Gross, and he received medical treatment. Based on that

assault and medical treatment, Gross brought 42 U.S.C. § 1983 claims against the

State of Florida and some jail officials. He alleged cruel and unusual punishment

in violation of the Eighth Amendment and denial of due process in violation of the

Fourteenth Amendment.[1] He also brought a Florida state law medical negligence

claim. The district court dismissed Gross' second amended complaint, and he

appeals.

Gross raises two contentions.[2] First, he contends that the district court erred

---

[1] The district court correctly noted that because Gross was a pretrial detainee at the time of the assault and medical treatment, his claims actually invoke the protections of the Fourteenth Amendment right to due process rather than the Eighth Amendment right to be free from cruel and unusual punishment. See Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."). As the district court also observed, however, the distinction makes no difference in the analysis of Gross' claims. Id. (stating that "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees").

[2] Because Gross is pro se, we liberally construe his argument. See Lorisme v. I.N.S., 129 F.3d 1441, 1444 n.3 (11th Cir. 1997) ("We read liberally briefs filed pro se.").

by dismissing his claims against the State of Florida, Sheriff Bob White, some unnamed deputy sheriffs, Captain Head, Nurse Carr, Dr. McKay, Lieutenant Hoolan, and Dr. Tracy McKay. Second, he contends that the court failed to give him the required notice that it was converting a motion to dismiss into a motion for summary judgment by considering materials outside of his second amended complaint.

## I.

The district court dismissed Gross' claims against the State of Florida as barred by sovereign immunity. "We review de novo a district court's ruling regarding Eleventh Amendment immunity." Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll., 421 F.3d 1190, 1192 (11th Cir. 2005) (alteration and quotation marks omitted). Congress did not abrogate a state's Eleventh Amendment immunity for § 1983 lawsuits seeking damages. See Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986). Because Florida has not waived its sovereign immunity, Gross' claims are barred. Id. (stating that "Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages"). Gross' claims against the State of Florida were properly dismissed based on sovereign immunity.

3

## II.

The district court dismissed Gross' claims against Sheriff White and some unnamed deputy sheriffs for failure to state a claim under 28 U.S.C. § 1915A. A district court is required to dismiss a complaint that "fails to state a claim upon which relief may be granted; or . . . [that] seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). We review those decisions de novo, taking the allegations in the complaint as true. Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006); Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997) (applying Fed. R. Civ. P. 12(b)(6) standards to review a judgment dismissing a complaint under § 1915A).

## A.

We begin with Gross' claim that Sheriff White in his supervisory capacity violated Gross' constitutional rights. "Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006). "The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quotation marks and alteration omitted). A claim based on supervisory liability must allege that the supervisor:

4

(1) instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights; (2) directed his subordinates to act unlawfully; or (3) failed to stop his subordinates from acting unlawfully when he knew they would. See Goebert v. Lee County, 510 F.3d 1312, 1331 (11th Cir. 2007). Gross alleged just the opposite. He stated that the jail's rules and regulations required "Red Dot," violence-prone inmates to be separated from the general inmate population. He asserted that unnamed deputies broke those rules by placing him in a cell with a Red Dot inmate who was known to escape from his restraints and to be violent. Gross did not allege that White directed anyone to break the rules or that White knew anyone would do so. Gross' allegations fail to meet the "extremely rigorous standard" for supervisory liability under § 1983. Cottone, 326 F.3d at 1360.

Gross further alleged that Sheriff White was grossly negligent and deliberately indifferent because he did not properly train and supervise his subordinates, and that allegation also fails to state a claim. "[S]upervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation." Id. Gross did not assert that White personally violated his constitutional rights or caused the alleged violation to occur. He did not allege that there was any custom or policy of

holding violence-prone, Red Dot inmates in jail cells with other inmates. He merely alleges that the deputies "knew about" rules and regulations requiring these inmates to be kept separate from the general population and that they "ignored them" by placing him in a cell with a Red Dot inmate who later attacked him. An allegation about an isolated occurrence is not enough to state a claim for deliberate indifference against White. See West v. Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."). Furthermore, allegations of jail officials' generalized awareness that someone is "a 'problem inmate' with a well-documented history of prison disobedience and [is] prone to violence" is not enough to show their subjective awareness that the inmate poses a substantial risk of serious harm to his cellmate. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003).

The district court correctly found that Gross had failed to state a § 1983 claim against White. Because the court properly dismissed all of Gross' federal claims against White, it did not abuse its discretion by declining to exercise supplemental jurisdiction over the state law claims against him. See Leib v. Hillsborough County Pub. Transp. Comm'n, 558 F.3d 1301, 1305 n.2 (11th Cir.

6

2009) ("Because we affirm the district court's dismissal of Leib's federal claims, we also find no abuse of discretion in the district court's decision not to retain jurisdiction over the state law claim.").

**B.**

The district court found that Gross failed to state a claim that unnamed deputies violated his constitutional rights by failing to protect him from a fellow inmate. That claim requires allegations that the deputies were "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed and that they actually drew such an inference. Purcell v. Toombs County, 400 F.3d 1313, 1319–20 (11th Cir. 2005) (quotation marks omitted); see also id. ("To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety." (quotation marks omitted)). "When enforcing the duty to provide reasonable safety to inmates, such a standard requires due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." Id. at 1319 n.15.

Gross' second amended complaint alleged that unnamed deputy sheriffs placed him in "the 'zone of danger'" with a Red Dot inmate, "who was known to be 'violent' and able to 'escape' out of restraints." Gross asserted that the deputies "had knowledge and/or access to knowledge" of that inmate's tendency to be

violent toward staff and fellow prisoners, but they ignored it.

Gross does not allege, however, that he alerted deputies to a threat soon enough to prevent the attack. Instead, he alleges that he called out for help after he was attacked, and when court officers arrived to subdue his attacker, Gross had already been hit several times.[3] Gross' conclusory allegations about the deputies' "knowledge and/or access to knowledge" about the danger potentially posed by the inmate who attacked him do not state a claim for deliberate indifference. See Carter, 352 F.3d at 1350 (holding that jail officials' generalized awareness that an inmate was a violence-prone troublemaker was not enough to show they were subjectively aware that he posed a substantial risk of serious harm to the plaintiff). Even if it would have been safer to confine Gross to a separate cell, that is not enough to show deliberate indifference. See Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (stating that "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983").

---

[3] Gross made these allegations in an exhibit to his second amended complaint: "While waiting for court in the holding cell with the other Risk Inmates, 2 of them were take out for court. That left me and another Inmate who was a 'Red Dot.' He told me to call the CO's and have them move me for he was going to get loose of his 'Black Box' and start hitting me. I said your kidding—the next thing I know is he had one hand loose—when I called for Help. By the time the CO's came in to subdue him, He had hit my neck and head and Right side of my head several times."

**III.**

The district court dismissed Gross' state law medical negligence claim against Dr. McKay because Gross did not comply with pre-suit notice and investigation requirements under Florida law. Before a plaintiff files a medical negligence claim against a physician in Florida, he "must mail to the prospective defendants a notice of intent to initiate litigation and a medical expert affidavit." Michael v. Med. Staffing Network, Inc., 947 So. 2d 614, 618 (Fla. 3d DCA 2007) (citing Fla. Stat. § 766.203(2)). Gross does not allege that he mailed those documents. He does not even allege that he has obtained a medical expert affidavit. Therefore, he has not met the procedural requirements necessary to pursue a medical negligence claim under Florida law. Cf. Alba v. Montford, 517 F.3d 1249, 1255 (11th Cir. 2008) (applying a similar Georgia law and stating that the prisoner plaintiff "stands in the same shoes as anyone else in Georgia filing a professional malpractice claim and is subject to no stricter rules than the rest of Georgia's residents"). Gross' medical negligence claim against McKay was properly dismissed.

**IV.**

The district court dismissed Gross' claims that Captain Head, Nurse Carr, Dr. McKay, and Lieutenant Hoolan violated his Eighth Amendment rights by

9

being deliberately indifferent to his serious medical needs.[4]  It also dismissed

Gross' retaliation claim against McKay, which asserted that McKay had ordered

Gross confined to isolation in retaliation for his filing administrative grievance

forms.  Finally, the court dismissed Gross' claim that unnamed deputies subjected

him to cruel and unusual punishment during that isolated confinement.  We review

those decisions de novo.  See Mitchell, 112 F.3d at 1490.

We first consider the documents that the district court relied on to reach

those decisions because Gross asserts that the court impermissibly considered

documents outside of his second amended complaint.  The district court relied on

"the documents Plaintiff submitted to the Court with his original civil rights

complaint, and with his Reply to Second Amended Motion to Dismiss and

Memorandum of Law to the Second Amended Civil Rights Complaint."  Those

---

[4] Gross' second amended complaint asserted:

> The Plaintiff, filed numerious [sic] (38) 'Requests For Administration Remedy' (Grievances), Form PSO #4-0027, dated August 30, 2004 through October 3, 2005, to Captain Head, Administrator of the Pasco County Jail, Dr. Tracy McKay, Doctor of the Pasco County Jail, and Nurse Carr, Medical Department Supervisor, of the Pasco County Jail, through Lieutenant Hoolan, Greivance Supervisor, of the Pasco County Jail, requesting medical treatment for injuries resulting from the Assault on the Plaintiff, and on August 26, 2004.  No treatment was given, and numerious [sic] grievances were ignored by the Medical Department and/or were denied or trashed by Lieutenant Hoolan.

R:56 at 13–14 (emphasis omitted).

documents included some grievance forms that were filed with Gross' opposition to McKay's motion to dismiss. Some additional grievance forms, a "Pre-Trial Brief," and a "Time Line" were filed with Gross' original complaint.

The district court correctly stated that in ruling on a motion to dismiss, it may consider not only the complaint but also the exhibits attached to it. See Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.") (quotation marks omitted); see also Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto."). Furthermore, "[w]here there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." Tucker v. National Linen Service Corp., 200 F.2d 858, 864 (5th Cir. 1953).[5]

Even documents submitted by a defendant with a motion to dismiss, rather than by the plaintiff with the complaint, may be considered by the court if "the plaintiff refers to [those] documents in the complaint and those documents are

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

11

central to the plaintiff's claim." Brooks, 116 F.3d at 1369. Here, the only documents considered by the district court were ones submitted by the plaintiff, Gross.

Gross filed some grievance forms with his opposition to the motion to dismiss and titled them: "Plaintiff's Exhibits for Second Amended Civil Rights Complaint and Memorandum of Law." Gross' second amended complaint specifically referred those grievance forms, which were central to his claims. Brooks, 116 F.3d at 1369. Even though the documents were not physically attached to the second amended complaint, they were incorporated by reference into it, and the district court did not err in considering them. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it.").

The district court also relied on documents that Gross filed with his original complaint. Gross contends that the court should not have considered those documents in ruling on the motion to dismiss. Before he filed his second amended complaint, the court ordered Gross to "submit a second amended complaint identifying the defendants and the claims asserted against them in one document." R:55 at 5. The court instructed Gross that it would consider only the claims that Gross raised in the second amended complaint. See id. at 6 ("Plaintiff is cautioned

12

that the second amended complaint <u>completely supersedes</u> the original and amended complaints.  Once a complaint is amended, the only issues before the Court are the ones raised in the <u>text</u> of the amended document.").  The court's instruction to Gross simply emphasizes the rule that "an amended complaint supersedes the original complaint."  <u>Fritz v. Standard Sec. Life Ins. Co.</u>, 676 F.2d 1356, 1358 (11th Cir. 1982).  That means that specific claims made against particular defendants in the original complaint are not preserved unless they are also set forth in the amended complaint.  <u>See</u> <u>Dussouy v. Gulf Coast Inv. Corp.</u>, 660 F.2d 594, 601 (5th Cir. Nov. 1981) ("[T]he amended complaint continues to state a claim based on tortious interference.").

The district court did not indicate, however, that the documents Gross had filed with his original complaint would not be considered as part of Gross' alleged factual basis for his claims.  Gross did not assert that those documents should not be considered or that the facts contained in them had changed or were incorrect.  A district court ruling on a motion to dismiss is not required to disregard documents that the plaintiff himself filed with his original complaint.  <u>See</u> <u>Grossman</u>, 225 F.3d at 1231 (stating that a court may consider "the pleadings and exhibits attached thereto" when ruling on a motion to dismiss).  Therefore, we conclude that the district court did not consider any materials "outside" of the pleadings when ruling

13

on the motion to dismiss Gross' claims for deliberate indifference to serious medical needs, retaliation, and cruel and unusual punishment while in isolated confinement. We now turn to the merits of each of those claims.

**A.**

Gross contends that Captain Head, Nurse Carr, Dr. McKay, and Lieutenant Hoolan violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs after Gross was assaulted by a fellow inmate. Gross admits, however, that a nurse was called to treat him. He asserts that the nurse simply gave him a band-aid and some paper towels to wipe the blood off of his head. Gross also acknowledges that x-rays were taken four days after the assault. He was told by the jail's medical staff that the "'x-rays indicated nothing wrong and no medical treatment would be given.'" R:56 at 8D. He alleges that he filed grievance forms requesting medical attention, but his requests were denied or ignored. He admits, however, that his condition after the assault was evaluated by nurses and by Dr. McKay, and he was given medication for his injuries. He also admits that his request for a second medical opinion was granted, and he was seen by an outside doctor who concluded that "nothing was wrong" with Gross.

"To prove a deliberate indifference claim, a plaintiff must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and

14

(3) causation between that indifference and the plaintiff's injury." Danley v. Allen, 540 F.3d 1298, 1310 (11th Cir. 2008). One "measure of whether a medical need is serious enough to satisfy the first element of a deliberate indifference claim is if the need is one that has been diagnosed by a physician as mandating treatment." Id. at 1310–11 (quotation marks omitted). Here, Gross was diagnosed by the jail physician and an outside physician as not needing treatment.

Furthermore, although Gross may feel that he received inadequate medical treatment, particularly in light of Dr. McKay's decision to discontinue Gross' heart medications, that is not enough to state a claim for deliberate indifference. "Medical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotation marks omitted). "[A] a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" is not enough to show deliberate indifference to serious medical needs. Gross admits that his medication was discontinued to determine if it would stop pain in his ear and dizziness. He also states that his blood pressure was monitored, and he was given an EKG after the medicine was discontinued. Therefore, Gross cannot satisfy any element of his deliberate indifference claim

15

against these defendants.

**B.**

Gross contends that after he filed grievance forms about his medical care, Dr. McKay retaliated against him by ordering Gross confined to isolation for six days in the mental health wing of the jail. "A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (quotation marks omitted). To establish a retaliation claim, the prisoner must show that (1) his speech was constitutionally protected; (2) he suffered adverse action such that the jail official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). Here, Gross was not disciplined by jail officials. Instead, he admits that he was placed in the mental health wing in isolation so that his medical condition could be monitored. He also admits that a nurse came to his cell every day to check on him and to take his blood pressure. Dr. McKay also visited him and told him the specific date on which he would be returned to the general population of the jail. He was in fact returned to the general population on that day. At best Gross

16

presented only conclusory allegations that McKay retaliated against him by placing him in isolation.  See Ashcroft v. Iqbal, — U.S. —, 129 S. Ct 1937, 1950 (2009) (stating that the pleading standards set forth in Fed. R. Civ. P. 8 do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").  The district court properly dismissed Gross' retaliation claim.

## C.

Gross contends that unnamed deputies violated his rights under the Eighth Amendment by subjecting him to cruel and unusual punishment while he was confined for six days in isolation.  He asserts that the deputies shut off his water supply for the first thirty-six hours that he was in isolation, banged on his cell door, and left the lights on twenty-four hours a day.  He also alleges that the communication device in his cell did not work, so he could not call for help.

Gross' complaints about the conditions of his confinement do not state a claim for a constitutional violation.  We have explained:

> [T]he Constitution does not mandate comfortable prisons.  If prison conditions are merely restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain.

Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (citations and quotation marks omitted).  To establish an Eighth Amendment claim based on conditions of

17

confinement, an inmate must show that the conditions were "extreme" and that prison officials were deliberately indifferent in subjecting the inmate to those extreme conditions. See id. Gross has not alleged the kind of extreme deprivations required to establish an Eighth Amendment conditions-of-confinement claim. See id. at 1298. Furthermore, Gross has not alleged that the unnamed deputies were deliberately indifferent to any substantial risk of serious harm to him. See Bass v. Perrin, 170 F.3d 1312, 1317 (11th Cir. 1999). He admits that while he remained in isolation in the mental health wing, he received meals and nurses checked his blood pressure daily. He spoke with medical staff and deputies. While Gross may have suffered some discomfort during his six days in isolated confinement, his specific allegations do not state a constitutional violation.

Finally, Gross alleges that he told an unnamed deputy that he was having a heart attack on February 11, 2005 between 9:00 and 10:30 p.m., and the deputy ignored him. Gross placed a medical request form on his cell door, and the form stated that he was scared and needed to talk to a nurse "for peace of mind and heart" because he was having pain behind his eyes and his left hand was getting numb. At that time, Gross did not specifically inform any deputy that he believed he was having a heart attack and that he needed immediate medical care for that serious medical condition. At 11:00 p.m. Gross was transported to the hospital

18

where he received medical treatment. Gross' allegations do not show that any deputies were deliberately indifferent to his serious medical needs on February 11, 2005.

**AFFIRMED.**