Martha VILA, as personal representative of the estate of Louis Vila, deceased, Plaintiff,

v.

MIAMI–DADE COUNTY, Public Health Trust, City of Miami, Officer Surami Kelly, Officer A. Guerra, Defendants.

Case No. 14–CV–21346.

United States District Court, S.D. Florida.

Signed Nov. 24, 2014.

Filed Nov. 25, 2014.

James S. Robertson, III, Cochran Firm, Miami, FL, for Plaintiff.

Warren Bittner, Miami City Attorney's Office, James J. Allen, Michael Beny Valdes, Miami, FL, Brent John Chudachek, Ronald Jay Cohen, Rice, Pugatch, Robinson & Schiller, P.A., Ft. Lauderdale, FL, for Defendants.

## *ORDER*

PAUL C. HUCK, District Judge.

THIS CAUSE is before the Court on Miami–Dade County's (the "County") and the Public Health Trust's (the "Trust") Motion to Dismiss the Second Amended Complaint [Doc. No. 34] and the City of Miami's (the "City"), Officer Surami Kelly's, and Officer A. Guerra's Motion to Dismiss the Second Amended Complaint

[Doc. No. 31]. For the following reasons, the Defendants' motions are granted.

### BACKGROUND

Plaintiff's Second Amended Complaint[1] [Doc. No. 29] asserts twenty federal- and state-law claims arising from the tragic death of Plaintiff's adult son, Louis Vila, on March 16, 2012. The following facts are taken from the Second Amended Complaint, as the Court is bound to accept Plaintiff's well-pleaded factual allegations as true on a motion to dismiss. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.,* 795 F.2d 948, 954 (11th Cir.1986).

Plaintiff alleges that Mr. Vila had "psychological problems," had been under the "constant care and supervision of psychiatrists" since 2001, and had been discharged from the psychiatric unit at Jackson Memorial Hospital (the "Hospital") on March 6, 2014.2d Am. Compl. ¶¶ 21–24. Mr. Vila lived, with his parents, and Plaintiff and Mr. Vila's sisters cared for him. *Id.* ¶ 22. On March 10, 2012—four days after his discharge from the Hospital's psychiatric unit—Mr. Vila "had become agitated" at the prospect of his father leaving the house. *Id.* ¶ 27. Plaintiff alleges that she called the Miami Police Department to request assistance with Mr. Vila. *Id.* Plaintiff alleges that she told the dispatcher that Mr. Vila had recently been discharged from a psychiatric hospital. *Id.*

Officer Surami Kelly responded to Plaintiff's call. Officer Kelly requested that Mr. Vila step outside. *Id.* ¶ 35. Once outside, Mr. Vila became even more upset, and "began to run around in an agitated state," ignoring Officer Kelly's commands.

*Id.* ¶¶ 36–38. Plaintiff alleges that Officer Kelly then struck Mr. Vila with her baton, subdued him with the assistance of Mr. Vila's father and other bystanders, handcuffed him, and arrested him. *Id.* ¶¶ 37–41. Shortly thereafter, Officer A. Guerra arrived on the scene, and Plaintiff alleges that Officers Kelly and Guerra jointly decided to arrest Mr. Vila and take him to jail. *Id.* ¶¶ 42–44.

Officers Kelly and Guerra took Mr. Vila to the Miami–Dade County Pretrial Detention Center (the "Detention Center"). Plaintiff alleges that one of the officers stated on an intake form that Mr. Vila "did suffer from psychiatric and mental health issues." *Id.* ¶ 44. Plaintiff indicates that unnamed Miami–Dade County Corrections and Rehabilitation Department ("Corrections") staff screened Mr. Vila and diagnosed him with schizophrenia and bipolar disorder. *Id.* ¶ 45. Plaintiff further alleges that the unidentified Corrections staff relied on Mr. Vila for a description of his current medications, and Mr. Vila—in his agitated state—did not provide a complete inventory of the medicines he was prescribed before his March 6 discharge from the Hospital. *Id.* ¶ 46.

Mr. Vila spent the next three days in the Detention Center without receiving any of his prescribed medication. Though Corrections staff eventually moved Mr. Vila to the Detention Center's psychiatric ward and provided him with a psychiatric evaluation, Plaintiff alleges that Mr. Vila's mental condition continued to worsen. *Id.* ¶¶ 49–53. Because he did not receive his medication, Plaintiff alleges that Mr. Vila became increasingly "agitated" and "en-

---

1. Plaintiff voluntarily dismissed her initial Complaint [Doc. No. 1–1], and her first Amended Complaint [Doc. No. 16] by agreed orders [Doc. Nos. 15 & 28], following Defendants' submissions of their earlier motions to dismiss. Plaintiff's initial Complaint also named two individual Miami–Dade County employees as defendants, but Plaintiff dropped these defendants after they submitted a motion to dismiss for lack of any relevant factual allegations [*see* Doc. No, 5].

gag[ed] in bizarre behavior." *Id.* ¶ 49–50. Then, on March 13—the first day that Mr. Vila received any medication since his arrest—Plaintiff alleges that Mr. Vila fell and broke his wrist. *Id.* ¶ 54.

Corrections staff transferred Mr. Vila to the Hospital's Ward D for treatment of his broken wrist. *Id.* ¶ 55. Plaintiff alleges that "one of the attending physicians" in Ward D ordered that Mr. Vila receive Risperidone, the anti-psychotic medication which had previously been prescribed for Mr. Vila upon his March 6 discharge from the Hospital's psychiatric unit. *Id.* ¶¶ 57–58. Mr. Vila spent the next three days shackled to his bed. *Id.* ¶ 61.

At around 7 a.m. on the morning of March 16, a Hospital staff member checked on Mr. Vila and found him unconscious. *Id.* ¶ 63. Hospital staff pronounced Mr. Vila dead shortly thereafter. *Id.* ¶ 64.

Plaintiff alleges that unidentified Hospital and Corrections staff caused Mr. Vila's death by improperly shackling him to his bed in Ward D. *Id.* ¶ 65. Plaintiff alleges that the Miami–Dade County Medical Examiner conducted an autopsy, and concluded that Mr. Vila died of a blood clot that had formed in his lower leg. *Id.* Plaintiff alleges that the Medical Examiner found that the shackles on Mr. Vila's leg caused the clot to form. *Id.*

Plaintiff also alleges a litany of negligent or unconstitutional acts leading up to Mr. Vila's death. Plaintiff claims that the City should have dispatched a crisis unit trained in dealing with the mentally ill; that Officers Kelly and Guerra arrested Mr. Vila without probable cause and should have taken him to a psychiatric facility, rather than jail; that the County denied Mr. Vila adequate medical care by placing him in detention, rather than in a psychiatric facility; that the County unconstitutionally withheld Mr. Vila's pre-

scribed medications while he was in Corrections' custody; and that when Mr. Vila finally did receive his medication, Trust staff administered it improperly. *Id.* ¶¶ 35–63.

Plaintiff alleges that these acts are the product of entrenched practices tacitly endorsed by the policymakers for the City, the County, and the Trust. Plaintiff alleges that the relevant County and Trust policymakers "were on notice" of institutional deficiencies in the treatment of mentally ill detainees, as evidenced by a 2004 grand jury report on Corrections treatment of mentally ill inmates; a 2008 investigation by the United States Department of Justice into alleged civil rights violations; and a memorandum prepared by then-County Mayor Carlos Alvarez that described a plan to improve conditions for mentally ill inmates. *Id.* ¶¶ 74, 84–85. Plaintiff contends that Defendants "made improvements" following the mayor's memorandum, but Defendants "remained deliberately indifferent to the known unlawful deficiencies and failed to take basic steps to correct" the inadequacies identified by the Department of Justice, *Id.* ¶ 87. Plaintiff similarly alleges that City policymakers were on notice of a need to improve their emergency response protocols to calls involving the mentally ill, as evidenced by the City's enactment of a "Crisis Intervention Policy."

## ANALYSIS

In her Second Amended Complaint, Plaintiff asserts twenty claims against Defendants. Plaintiff alleges violations under 42 U.S.C. § 1983 against the County and the Trust for failing to provide adequate medical care; against the individual officers for an unlawful seizure and deliberate indifference; and against the City for failing to train its officers to properly respond to the mentally ill. Plaintiff also alleges

that the County and the Trust discriminated against Mr. Vila in violation of the Americans with Disabilities Act. Plaintiff further asserts various state-law claims against the respective Defendants for wrongful death, false imprisonment, false arrest, and battery.

As they did in response to Plaintiff's initial Complaint and First Amended Complaint, Defendants have submitted motions to dismiss. The City and County Defendants argue that Plaintiff fails to state any claim for government liability under 42 U.S.C. § 1983, because Plaintiff has not shown that a custom or policy endorsed by Defendants' policymakers caused Mr, Vila's death. The City further argues that Plaintiff has not stated a section 1983 claim against Officers Kelly and Guerra, because Plaintiff has not shown that the officers violated Mr. Vila's clearly established rights. As to Plaintiff's Americans with Disabilities Act claims against the City and the County, Defendants contend that Mr. Vila was not denied any benefits or access to government services, on the basis of his disability.

## I. Legal Standard

■ When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all well-pleaded factual allegations in the complaint are considered true and are construed in the light most favorable to the plaintiff, *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir.2010). Under Rule 8, "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed.R.Civ.P. 8(a)(2), (d)(1). "[T]he statement need only 'give the defendant fair notice of what the … claim is

and the ground upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citation omitted). However, the plaintiff must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Bell v. J.B. Hunt Transp., Inc.,* 427 Fed.Appx. 705, 707 (11th Cir.2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## II. *Monell* claims against the County, the Trust, and the City

■ Counts I, II, and VII of Plaintiff's Second Amended Complaint allege civil rights violations by the County, the Trust, and the City under 42 U.S.C. § 1983. Section 1983 provides a private cause of action for a government's unconstitutional actions. *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It does not, however, impose liability simply on the basis of an employer-employee relationship with an alleged tortfeasor, that is, *respondeat superior* liability. *Id.; see also McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir.2004). Rather, a plaintiff asserting a section 1983 claim must show that the governing body itself caused his or her injury. *McDowell,* 392 F.3d at 1289, Specifically, the plaintiff must show: "(1) that his constitutional rights were violated; (2) that the [government] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or

custom caused the violation." *Id.* (citing *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

The second prerequisite to § 1983 liability articulated in *McDowell*— the existence of a policy or custom of deliberate indifference to constitutional rights—is determinative of Plaintiff's section 1983 claims. To adequately plead a custom or policy under section 1983, Plaintiff must show "a persistent and widespread practice," that is, a practice that is "so settled and permanent that it takes on the force of the law." *Id.* at 1290. Further, Plaintiff must show that "officials or governing bodies who speak with final policymaking authority for the local government actor concerning the action alleged" deliberately established or endorsed this settled and permanent policy. *Rosario v. Miami–Dade Cnty.,* 490 F.Supp.2d 1213, 1221 (S.D.Fla.2007).

The vast majority of Plaintiff's "custom or policy" allegations are simply recitations of the elements of a section 1983 cause of action without any supporting facts.[2] Such conclusory allegations "carry no weight" in the Court's analysis, because "[c]onclusory allegations fail to apprise defendants of the factual basis of the plaintiff's claims." *See Franklin v. Curry,* 738 F.3d 1246, 1250–51 (11th Cir.2013). *See Twombly,* 550 U.S. at 570, 127 S.Ct. 1955 (a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face"), The Supreme Court has directed that district courts faced with such conclusory allegations should disregard them, and "then determin[e] whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief ....' " *Franklin,* 738 F.3d at 1251 (citing *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937). *See also S. Florida Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 409 n. 10 (11th Cir.1996) ("As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss.").

After disregarding Plaintiff's conclusory allegations of a custom or policy, all that remains are allegations based on a few policies that Defendants allegedly adopted in an attempt to improve law enforcement treatment of the mentally ill. For the County and the Trust[3], Plaintiff identifies a 2008 memorandum prepared by then-County Mayor Carlos Alvarez. According to Plaintiff, Alvarez's memorandum outlined "a plan to correct problems at Miami–Dade County's six main jail facilities" after a Department of Justice inves-

---

**2.** Plaintiff argues that her Second Amended Complaint "detailed incidents forming a widespread and long-standing pattern" of constitutional violations. Pl.'s Resp. ¶ 13 [Doc. No. 40]. The Second Amended Complaint itself does not support Plaintiff's contention, and in fact fails to identify a single other incident, much less the numerous incidents required to show a widespread pattern. Instead, Plaintiff's allegations of a pattern of constitutional violations are stated almost entirely as legal conclusions, without any supporting facts. For example, Plaintiff conclusorily alleges that the County and the Trust, among other things, "are engaging in a pattern or practice of violating the rights of inmates" and have both "failed to comply with the obligation to provide a constitutionally acceptable level of health care...." 2d Am. Compl. ¶¶ 67, 109. Similarly, Plaintiff alleges that the City "fostered an environment in which officers are..... encouraged to deliberately ignore an individual's obvious signs of mental illness...." *Id.* ¶ 109.

**3.** The Miami–Dade County Code vests ultimate policymaking authority for the Trust in the Board of County Commissioners. *Russell v. Public Health Trust of Miami–Dade Cnty.,* No. 08–cv–23442, 2009 WL 936662 at *4 (S.D.Fla. Apr. 6, 2009) (citing Miami–Dade County Code, Chapter 25A, §§ 25A–1, 25A–7).

tigation found deficiencies in the County's treatment of inmates. Plaintiff argues that the Mayor's memorandum supports her section 1983 claims by demonstrating County policymakers' knowledge or awareness of pervasive deficiencies in their treatment of the mentally ill.

■ To show that a policymaker was deliberately indifferent to inmates' medical needs, Plaintiff must "present some evidence that the [governing body] knew of a need to train and/or supervise in a particular area *and* the [governing body] made a deliberate choice not to take any action." *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.1998) (emphasis supplied). Therefore, even assuming that the Mayor's memorandum demonstrates notice of a need to train or supervise in the area of mentally ill inmates, Plaintiff must also show that County policymakers deliberately ignored this notice. Plaintiff has not done so. In fact, Plaintiff's cited policies seem to indicate the opposite of a deliberate choice of inaction. These policies, as described by Plaintiff, indicate at worst that County policymakers recognized a deficiency and attempted to rectify it. Therefore, Plaintiff's allegations against the County have failed to satisfy the "rigorous standards of culpability and causation ... applied to ensure that the [County] is not held liable solely for the actions of its employee," *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Similarly, Plaintiff alleges that the City's "Crisis Intervention Policy," which was established in 2003 and mandated a targeted, trained response to emergency calls involving the mentally ill, demonstrates the City's notice of deficiencies in its responses to such calls. Plaintiff has not, however, alleged any facts showing that the City's policy of training certain officers to re-

spond to emergency calls involving mentally ill individuals was enacted in response to any specific notice of constitutional deficiencies. *See City of Canton,* 489 U.S. at 398, 109 S.Ct. 1197 (section 1983 plaintiff must establish that "facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens"). Further, Plaintiff's allegations against the City, like her allegations against the County, indicate that the relevant policymakers were at most aware of a problem, which they attempted to correct. Therefore, Plaintiff has satisfied neither the causation nor the proof of fault elements necessary to state a section 1983 claim against the City. *See Brown,* 520 U.S. at 404, 117 S.Ct. 1382 ("*deliberate* action attributable to the municipality itself [must be] the 'moving force' behind the plaintiff's deprivation of federal rights," for the plaintiff to state a section 1983 claim).

For all of her section 1983 claims against the City, the County, and the Trust, Plaintiff has, at most, alleged that these Defendants established policies on the treatment of mentally ill arrestees and inmates, and that these Defendants' employees may have failed to follow the policies in Mr. Vila's case. Isolated incidents of a government employee's disregard of a stated policy are insufficient to establish a custom or policy for the purposes of section 1983. *See McDowell,* 392 F.3d at 1290. In *Gross v. White,* for example, the plaintiff, a prisoner, alleged that his assault by a fellow inmate was the product of the jail's failure to follow its stated policy of segregating dangerous inmates from the general population. 340 Fed.Appx. 527, 531 (11th Cir.2009). The plaintiff did not identify any other similar occurrences or any decisions by officials to consciously

disregard the policy. *See id.* The Eleventh Circuit affirmed the district court's dismissal of the plaintiff's section 1983 claim, because "[a]n allegation about an isolated occurrence is not enough to state a claim for deliberate indifference ...." *Id. See also Russell v. Hennepin Cnty.*, 420 F.3d 841, 848 (8th Cir.2005) (plaintiff failed to allege a custom or policy, because, "at worst," the plaintiff's injury "resulted not from the execution of [the] policy but from the failure to assiduously follow the policy").

Though Mr. Vila's death was tragic, Plaintiff has not identified any custom or policy that could attribute it to any decision made by a County or City policymaker. Plaintiff has not identified any stated policies of mistreating arrestees and detainees. Further, Plaintiff has not identified the kind of pervasive constitutional violations necessary to raise an inference that City or County policymakers were aware of the risk to Mr. Vila, and consciously disregarded that risk. *See Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir.2005). Taking Plaintiff's allegations as true, it appears that Mr. Vila's death resulted from County and Trust employees' failure to follow the dictates of County policymakers. While unfortunate, this fact does not give rise to a claim for government liability under section 1983, because section 1983 does not impose *respondeat superior* liability. *See id.* at 1115–16. Therefore, Plaintiff's section counts against the City, the County, and the Trust all fail to state a claim upon which relief can be granted.[4]

## III. Section 1983 claims against the Officers[5]

Counts III, IV, V, and VI of Plaintiff's Second Amended Complaint allege that Officers Kelly and Guerra violated 42 U.S.C. § 1983 by their deliberate indifference to Mr. Vila's medical needs and by unreasonably arresting Mr. Vila. Under section 1983, "an aggrieved party may seek a remedy against government officials for the violation of her constitutional rights in a suit for damages." *Bates v. Harvey*, 518 F.3d 1233, 1241 (11th Cir. 2008). However, the discretionary actions of police officers such as Officers Kelly and Guerra are immune from liability, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir.1992) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Bates*, 518 F.3d at 1242 (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

The officers assert, and Plaintiff does not contest, that they acted within the scope of their discretionary authority when they arrested Mr. Vila and transported him to the Pretrial Detention Center. Therefore, Plaintiff must "establish that qualified immunity is not appropriate" by satisfying a two-part inquiry. *Id.* First, Plaintiff must show that the officers violated Mr. Vila's constitutional right. And second, Plaintiff must show that this right

---

**4.** Because Plaintiff has failed to properly allege a custom or policy, it is unnecessary to analyze Defendants' additional arguments for dismissal of Plaintiff's section 1983 claims.

**5.** Plaintiff has not identified or named as defendants any of the individual County employ-

ees who allegedly withheld medication and treatment from Mr. Vila during his three-day detention, or any of the individual Trust employees responsible for Mr. Vila's care at the Hospital.

was "clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). "[J]udges of the district courts ... should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236, 129 S.Ct. 808.

Plaintiff asserts that the officers violated Mr. Vila's right to be free from unreasonable seizure by arresting Mr. Vila, rather than assisting him in obtaining treatment. Mr. Vila, however, had no right, clearly established or otherwise, to be free from arrest under the circumstances of this case. Plaintiff alleges that Officer Kelly arrested Mr. Vila because he was "run[ning] around in an agitated state" and refusing to heed her commands. Plaintiff further alleges that Officer Kelly required the assistance of Mr. Vila's father and several bystanders to subdue him. Though Plaintiff asserts that Officer Kelly should have handled the situation differently by, among other things, calling for backup and requesting the assistance of officers trained to deal with mentally ill individuals, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citing *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Therefore, to show that Officer Kelly violated Mr. Vila's clearly established rights, Plaintiff must demonstrate that, "every reasonable government official in a similar position would have known that defendants' acts were unlawful." *See Rodgers v. Horsley,* 39 F.3d 308,

310 (11th Cir.1994) (citing *Harlow,* 457 U.S. at 817–19, 102 S.Ct. 2727).

Plaintiff has not identified any precedent establishing that a reasonable officer in Officer Kelly's position would have known that arresting Mr. Vila, who was agitated and resistant to Officer Kelly's commands, was unlawful under the circumstances. In fact, Officer Kelly acted according to Florida law, which specifically provides that "[w]hoever knowingly and willfully resists, obstructs, or opposes ... any officer ... is guilty of a felony of the third degree ....". Fla. Stat. § 843.01. Further, Eleventh Circuit precedent plainly establishes that police officers do not violate the law by arresting, and even using force to arrest, individuals who ignore their commands and behave erratically. *See Zivojinovich v. Barner,* 525 F.3d 1059, 1073 (11th Cir. 2008) (officers were entitled to qualified immunity, and did not violate the plaintiff's constitutional right by using force in his arrest, because the plaintiff "repeatedly ignored instructions and continue[d] to act belligerently....."); *Chaney v. City of Orlando, Fla.,* 291 Fed.Appx. 238, 244 (11th Cir.2008) (officer did not violate a clearly established right by grabbing the plaintiff, throwing him to the pavement, using a Taser on him, and putting his foot on the plaintiff's head, because the plaintiff had passively resisted the officer and refused to comply with his instructions).

In light of the foregoing authorities, Mr. Vila had no right to be free from arrest under the circumstances of this case, Mr. Vila ignored and resisted a police officer's repeated commands. This was a crime under Florida law. Officer Kelly—who had simply responded to Plaintiff's call to the police, requesting emergency assistance with Mr. Vila—had probable cause to arrest Mr. Vila. Therefore, Plaintiff has failed to state a section 1983 claim for unlawful arrest against either officer.

Plaintiff also alleges that the officers' transport of Mr. Vila to the Detention Center deprived him of the right to medical treatment, and that the officers were deliberately indifferent to Mr. Vila's medical needs. To state a claim for deliberate indifference to a medical need against the officers, Plaintiff must satisfy an objective and subjective test. Under the objective component of the test, Plaintiff must show that Mr. Vila had a serious medical need. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir.2007). "A medical need that is serious enough to satisfy the objective component is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.*

Here, Plaintiff has adequately alleged that Mr. Vila's psychiatric condition constituted a serious medical need. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991) (noting that "the deliberate indifference standard also applies to inmates' psychiatric or mental health needs"). To state a deliberate indifference claim, however, Plaintiff must further satisfy the subjective component of the test. Under the subjective component, Plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Gilmore v. Hodges*, 738 F.3d 266, 274 (11th Cir.2013) (citations, punctuation omitted). "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris*, 941 F.2d at 1505,

Plaintiff claims that the officers should have taken Mr. Vila to a psychiatric facility, rather than to the County's Pretrial Detention Center, and that they exhibited deliberate indifference to Mr. Vila's medical needs in failing to do so. This contention fails on at least two grounds. First, Plaintiff has not shown that the officers actually disregarded Mr. Vila's medical needs. In fact, Plaintiff has alleged that, at the Pretrial Detention Center, the officers completed "an agency advisory form regarding any psychiatric or mental health history," and the officers stated on the form that Mr. Vila "did suffer from psychiatric and mental health illness." At that point, the officers could reasonably have assumed that Corrections staff would provide Mr. Vila with the necessary treatment. *See Andujar v. Rodriguez*, 486 F.3d 1199, 1203–04 (11th Cir.2007) (holding that paramedics were not deliberately indifferent when they released an injured arrestee into police custody after treating him, because the paramedics "assumed the police would transport [the arrestee] to a medical facility for further treatment after processing").

Second, even assuming that the officers' decision to transport Mr. Vila to the Detention Center, rather than a psychiatric facility, did amount to deliberate indifference, Plaintiff has still failed to show that the officers' actions violated Mr. Vila's clearly established rights. While an arrestee certainly has a right to necessary medical treatment,[6] *see Thomas v. Town of Davie*, 847 F.2d 771, 772 (11th Cir.1988), this broad and general rule does not apply, "with obvious clarity to the specific conduct in question...." *See United States v. Lanier*, 520 U.S. 259, 271, 117 S.Ct. 1219,

---

**6.** Treatment of a pretrial detainee is governed by the Fourteenth Amendment's Due Process clause; a convicted prisoner is protected by the Eighth Amendment's Cruel and Unusual Punishment Clause. *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n. 6 (11th Cir.1997). The standards, however, are essentially the same in the context of a deliberate indifference analysis. *See id.* (citations omitted).

137 L.Ed.2d 432 (1997). Plaintiff has not cited, and the Court cannot find, any precedent holding that the Constitution requires an arresting officer to determine whether a mentally ill arrestee's psychiatric condition is so severe as to require immediate medical attention, and that the officer violates the arrestee's constitutional rights by subsequently transporting the arrestee to jail, rather than a psychiatric facility. Plaintiff has similarly failed, to cite any precedent establishing that a mentally ill person who is the subject of an emergency police call has a right to receive a response from a specially trained psychiatric crisis intervention team, rather than whichever officer is closest and most able to promptly respond to the emergency.

In the absence of a clear and relevant constitutional rule, Plaintiff cannot show that any law "truly compels [ ] the conclusion for all reasonable, similarly situated public officials" that the officers' decision to transport Mr. Vila to jail violated Mr. Vila's federal rights. *See Evans v. Stephens,* 407 F.3d 1272, 1282 (11th Cir.2005). Therefore, the officers are entitled to qualified immunity from suit for Plaintiff's section 1983 claims for deliberate indifference to medical needs.[7]

### IV. ADA claims against the City, the County, and the Trust

▮ Plaintiff also asserts that the City, the County, and the Trust violated the Americans with Disabilities Act in their treatment of Mr. Vila. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entities." 42 U.S.C. § 12132. To state an ADA claim against any Defendant, Plaintiff must allege "(1) that [Mr. Vila was] a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of [Mr. Vila's] disability." *Jones v. Rutherford,* 546 Fed.Appx. 808, 811 (11th Cir.2013) (citing *Bircoll v. Miami–Dade Cnty.,* 480 F.3d 1072, 1083 (11th Cir.2007)).

▮ With respect to the County, Plaintiff argues essentially that Corrections and Trust staff negligently treated Mr. Vila's medical needs. Plaintiff contends, for example, that "Defendants failed to accommodate and provide the medical care necessary" for Mr. Vila's psychiatric condition. Pl.'s Resp. ¶ 17 [Doc. No. 40]. "However, the ADA is not a 'remedy for medical malpractice' and 'would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.'" *Jones,* 546 Fed.Appx. at 811–12 (citing *Schiavo v. Schiavo,* 403 F.3d 1289, 1294 (11th Cir.2005)). Therefore, Plaintiff has failed to state an ADA claim against the County.

▮ Plaintiff alleges that the City violated the ADA because its officers arrested Mr. Vila without calling a "Crisis Intervention Unit" trained to deal with mentally ill individuals and then transported him to

---

7. In her response to the City's Motion to Dismiss, Plaintiff for the first time argues that the officers are liable under the *DeShaney* doctrine, which requires officials with custody of inmates to provide them with "reasonable safety." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.,* 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). As previously established, however, the officers did reasonably provide for Mr. Vila's safety by transporting him to the Detention Center, and alerting Corrections staff to Mr. Vila's psychiatric condition.

jail, rather than to a psychiatric facility. Under certain circumstances, an arrestee may state an ADA claim against a municipality based on the conduct of its arresting officers. *Bircoll,* 480 F.3d at 1082–86. However, the Eleventh Circuit has cautioned that the reasonableness of ADA accommodations, as they relate to the conduct of arresting officers, "are relative to the particular circumstances of the case, and the circumstances of a[n] ... arrest on the roadside are different from those of an office or school or even a police station." *Id.* at 1086. In *Bircoll,* the Eleventh Circuit rejected an ADA plaintiff's similar contention that an officer should have awaited a sign-language interpreter before administering a sobriety field test to the plaintiff, who was legally deaf. *Id.* Considering the practical and public-safety interests that the police have in quickly testing and securing a DUI suspect, the Eleventh Circuit concluded that the plaintiff failed to state an ADA claim. *Id.* at 1086–87.

Here, Plaintiff's assertion that, in responding to Plaintiff's call for immediate help, the City should have anticipated the need for and waited for a Crisis Intervention Unit and officers specifically trained to deal with schizophrenic individuals, does not constitute a viable ADA claim. Officer Kelly responded to an emergency call for assistance, and found Mr. Vila behaving erratically and refusing to respond to orders. The situation escalated, and Officer Kelly—assisted by Mr. Vila's father and other bystanders—ultimately subdued and arrested Mr. Vila. To force the police to delay a response to Plaintiffs call until a specialized unit was mobilized, or to require Officer Kelly to await specially trained backup while Mr. Vila became increasingly agitated and erratic, would have been both impractical and dangerous. Therefore, Plaintiff cannot state a claim that Mr. Vila was unreasonably denied an accommodation in the course of his arrest.

## V. Remaining state law claims

Plaintiff's remaining claims for battery, negligence, false imprisonment, and false arrest all arise under state law. Because Plaintiff's allegations arising under federal law all failed to state a claim upon which relief can be granted, the Court must now consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the remaining state-law claims. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* Accordingly, Plaintiff's remaining state-law claims are dismissed without prejudice.

## *CONCLUSION*

For the foregoing reasons, Counts I, II, III, IV, V, VI, VII, VIII, IX, and X of Plaintiff's Second Amended Complaint are hereby DISMISSED WITH PREJUDICE.

Plaintiff's remaining counts are hereby DISMISSED WITHOUT PREJUDICE.