K. MICHAEL MOORE, CHIEF UNITED STATES DISTRICT JUDGE
*1328 THIS CAUSE came before the Court upon Defendants' Motions to Dismiss (ECF Nos. 6, 9). The Motions[1] are fully briefed and the matter is ripe for review.
I. BACKGROUND[2]
Plaintiff AHE Realty Assoc., LLC ("Plaintiff" or "AHE") is the owner of commercial property at 9999 NE Second Avenue, located within the Village of Miami Shores ("Village"). Complaint (ECF No. 1-1), ¶ 7. The property is a three story, mixed-use office rental building (the "Building") known as the Shoreview Center. Id. The tenants include professional offices, medical offices, and restaurants. Id.
Central to this dispute is one of the Building's side doorways. The side doorways are egress only doors-doors that open only for persons exiting the building. Id. , ¶ 9. On or about October 12, 2017, the Building's first floor north side egress only door system (the "North Egress Door") was vandalized and/or damaged by an ambulatory patient delivery driver during the transportation of a patient to Fresenius Dialysis, one of the Building's tenants. Id. , ¶ 10. As a result of this incident, the North Egress Door became susceptible to occasional minor jamming due to the damaged lock. Id. , ¶¶ 10-11.
On or about October 13, 2017, Ismael Naranjo, as the Village's Building Official, inspected the North Egress Door and determined that the door had been intentionally locked by AHE. Id. , ¶ 12. That afternoon, Naranjo met with AHE's property manager Julio Martinez and informed him that the allegedly locked North Egress Door violated certain codes and ordinances, which Naranjo did not specify. Id. , ¶ 13. Naranjo instructed AHE to unlock the North Egress Door and replace the entire door system so that it could operate as both an ingress and egress door. Id. , ¶ 13. Martinez denied that the North Egress Door was locked and informed Naranjo: (1) that it may appear locked due to occasional partial jamming due to the damaged lock, (2) that AHE had already taken affirmative steps to address the issue by ordering custom replacement door framing and hardware, and (3) that AHE objected to the instructions to convert the North Egress Door system into both an ingress and egress system. Id. , ¶ 14. Naranjo then informed Martinez that once AHE put into place the proposed system it would be compliant and also instructed AHE to unlock the door and file a police report. Id. , ¶ 15. Martinez then unjammed the North Egress door, rendering it fully functional as an egress only door. Id. , ¶ 16.
*1329 Following the October 13, 2017 meeting, AHE was not served with a formal notice of violation. Id. , ¶ 17.
On October 24, 2017, Naranjo emailed Martinez stating:
The condition of the egress door at 9999 NE 2nd Avenue creates hazards with respect to means of egress and fire protection as provided under the Florida Building Code and Miami Dade County Code for the particular Occupancy. You are hereby order [sic ] to maintain the egress door open at all time [sic ]. The door should be operable from both sides without the use of a key, tool and or special knowledge. Failure to comply with this order immediately will result in an unsafe structure and the building will be order [sic ] to be vacated immediately.
Id. , ¶ 18.
On October 27, 2017, Naranjo sent AHE's counsel an email which states:
Good afternoon Mr. Alderman,
No, I was not aware that you represent Julio [Martinez] and AHE's. Over the past two weeks we have met with Julio several times regarding the issue with the unsafe condition related to the egress door on the Northside of the building. We have tried every way possible to work with your client. Julio has failed to find a permanent solution to correct the problem. This is a life safety issue and thereby must be corrected immediately.
I know the impact that an unsafe building will have on all the tenants on the building, believe me it is the last thing I want to do, however we need to protect the safety of everyone that works and visits this building. Julio must take immediate action to be complied [sic ]. The reason that I told Julio (on my email from October 24, 2017) to maintain the door operable from both sides is because that is the only way that the existing door will not have a problem.
Egress doors, should be complied [sic ] with the requirements of section 108 of the 2014 Florida Building Code, Building.
Thank you.
Ismael Naranjo, BO, CFM
Building Director
Id. (Ex. B). On October 30, 2017, Naranjo posted an "unsafe building" orange notice (the "Unsafe Building Notice") declaring the Building unsafe within the meaning of Section 8-5 of the Miami-Dade County Code ("MDC Code"). Id. , ¶ 26. Naranjo also sent a letter to AHE's bank stating that the Building was unsafe and in violation of MDC Code. Id. , ¶ 33. That same day, Martinez met with Tom Benton, the Village's City Manager, who informed AHE that the Village rescinded its demand that the side entrance doors be replaced with ingress and egress door systems, as opposed to egress only doors. Id. , ¶ 28. The City Manager also informed AHE that it could temporarily cure the unsafe building declaration by utilizing a wood stopper to prop the door open and prevent it from jamming until the replacement egress only door system was installed. Id. Later that day, Martinez inserted a small piece of cardboard into the locking mechanism, thereby temporarily converting the door from egress only to both an ingress and egress door. Id. AHE notified Mr. Benton of its compliance. Id.
On the morning of October 31, 2017, because the Unsafe Building Notice remained posted on the Building, Martinez notified Naranjo that the Building would be evacuated pursuant to the orders set forth in the Unsafe Building Notice and *1330 the letter to the bank.[3] Id. , ¶ 31. Naranjo emailed Martinez and his counsel informing them that following the inspection that day, the Unsafe Building Notice had been removed. Id. , ¶ 32, Ex. D. Counsel for AHE and Martinez responded seeking clarification, to which Naranjo replied:
When I say that the unsafe building notice has been removed, I meant that the requirement for correction noted on the unsafe building notice has been cured, the notice was rescinded. The actions taken to correct the violation satisfy the requirements for the means of egress. Attached please find a copy of the unsafe notice I emailed you yesterday, the notice reflects the case number as UB-10-17-2462.
Id. , Ex. D.
On November 3, 2017, AHE demanded a due process hearing. Id. , ¶ 41. On November 9, 2017, the Village's attorney sent AHE a letter stating that the Village "notified the Board Administration Section of the County's Department that deals with the County's Unsafe Structures Board." Id. , ¶ 42. The Village's attorney also confirmed that the violation had been cured and that "[u]nder all the circumstances, we are a bit confused about exactly what it is you now are seeking in your email." Id.
On December 27, 2017, AHE filed the Complaint (ECF No. 1-1) in the Circuit Court of the Eleventh Judicial District. The action was removed to this Court on January 16, 2018. See Notice of Removal (ECF No. 1). On January 10, 2018, the County's Unsafe Structures Board scheduled a public hearing for March 14, 2018.[4] See Joint Scheduling Report (ECF No. 12), at 4.
In the Complaint, AHE asserts the following claims: declaratory judgment as to all Defendants (Count I), a petition for writ of mandamus as to all Defendants (Count II), violation of § 1983 as to Naranjo (Count III), violation of § 1983 as to the Village (Count IV), and violation of § 1983 as to the County (Count V[5] ). Collectively, Defendants move to dismiss the Complaint in its entirety.
II. LEGAL STANDARD
To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly , 550 U.S. at 555, 127 S.Ct. 1955. When considering a motion to dismiss, the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008).
A complaint must also contain enough facts to indicate the presence of *1331 the required elements. Watts v. Fla. Int'l Univ. , 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.' " Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis , 297 F.3d 1182, 1188 (11th Cir. 2002). In a civil rights action, more than mere conclusory allegations are required in order for a complaint to survive dismissal. See Fullman v. Graddick , 739 F.2d 553, 556 (11th Cir. 1984).
III. DISCUSSION
This dispute boils down to an allegedly wrongful eviction notice that did not result in the displacement of any of AHE's tenants because it was rescinded nearly immediately after its posting. In what is best described as a "shotgun"[6] pleading, AHE appears to allege that its Fifth, Eighth, and Fourteenth Amendment rights were violated by the arbitrary and bad faith actions of Naranjo by declaring the Building unsafe, the failure of the Village and Naranjo to provide pre-deprivation due process safeguards, interference with AHE's possession of property and relationship with its tenants, and irreparable harm that threatens human life by virtue of an erroneous and arbitrary declaration.
For the reasons that follow, dismissal of the federal claims (Counts III-V) is appropriate because AHE has failed to allege a violation of a federal right and, even if it did, Naranjo is entitled to qualified immunity, and the Village and County are not liable for Naranjo's alleged actions. By virtue of dismissal of the federal claims, the remaining state law claims should be remanded to state court.
A. § 1983 Claims
"The Fourteenth Amendment of the United States Constitution protects against deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' without the due process of law." Maddox v. Stephens , 727 F.3d 1109, 1118 (11th Cir. 2013) (quoting Zinermon v. Burch , 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) ). The Due Process Clause provides two different types of constitutional protections: procedural due process and substantive due process. Id. (citing McKinney v. Pate , 20 F.3d 1550, 1555 (11th Cir. 1994) ). A violation of procedural or substantive due process may form the basis for a § 1983 action. McKinney , 20 F.3d at 1555. AHE alleges violation of both its procedural and substantive due process rights.
1. Procedural Due Process
In order to state a claim for the deprivation of procedural due process, a plaintiff must allege (1) the deprivation of a constitutionally protected liberty or property interest, (2) state action, and (3) constitutionally inadequate process. J.R. v. Hansen , 736 F.3d 959, 965 (11th Cir. 2013).
a. Pre-Deprivation Procedural Due Process
The Village Defendants argue that there was no procedural due process violation-without *1332 distinguishing between pre-deprivation and post-deprivation violations-because there was an adequate post-deprivation remedy. In opposition, AHE argues that it was deprived of pre-deprivation procedural due process because of Naranjo's failure to provide notice and the existence of the municipal ordinance alone is insufficient as a matter of law to provide notice.
AHE does not challenge the legality of Section 8-5 of the MDC Code but instead challenges its interpretation and implementation here. Section 8-5 permits a building official to take certain emergency actions if the building official believed there is an actual or immediate danger to the building or persons. In relevant part, Section 8-5(f) reads: "[w]hen in the opinion of the Building Official, there is actual or immediate danger of the failure or collapse of a building or structure, or there is a health, windstorm or fire hazard, he may order the occupants to vacate ... In such event, the operation of the notice and hearing requirements of this Section shall be suspended as reasonably necessary in the opinion of the Building Official to redress the emergency situation."
AHE argues that the Building was never "unsafe" as defined by Section 8-5(b) such that emergency action pursuant to Section 8-5(f) was justified. However, AHE alleges facts which indicate just the opposite. One of the physical criteria for deeming a building a fire hazard and/or unsafe is when "[t]he building condition creates hazards with respect to means of egress and fire protection as provided herein for the particular Occupancy." Section 8-5(b)(1)(iii). Emergency action is justified "[w]hen in the opinion of the Building Official, ... there is a health, windstorm or fire hazard..." Section 8-5(f). AHE admits that the North Egress Door lock was damaged and susceptible to minor jamming such that it appeared locked at times-this falls squarely within the definition of a hazard with respect to means of egress.[7] Construing the facts alleged in the light most favorable to AHE, Naranjo had a reasonable basis to conclude that the Building met the physical criteria for being declared as unsafe, as defined by Section 8-5(b)(1)(iii).
Because the facts alleged indicate that the Building was unsafe as defined by Section 8-5(b)(1)(iii), MDC Code provides that emergency action may be taken in such situations. MDC Code Section 8-5(f). As relevant here, the requirements for notice and a hearing "shall be suspended as reasonably necessary." Id. Accordingly, MDC Code explicitly provides for the suspension of notice and a hearing under these circumstances.
AHE relies upon Grayden v. Rhodes , 345 F.3d 1225 (11th Cir. 2003), for the proposition that it was owed notice and the opportunity to be heard incident to the deprivation alleged. However, the facts in Grayden are distinguishable and, critically, the Eleventh Circuit repeatedly emphasized its narrow holding-that the district court erred when it concluded that the building official defendant was not entitled to qualified immunity as to plaintiff's post-deprivation due process claims. Grayden , 345 F.3d at 1249. In Grayden , *1333 the defendant city official inspected units of a residential apartment complex and subsequently notified the owner of the complex that city code violations presented a threat to occupants and threatened to declare the building unsafe if violations were not corrected. Id. at 1228. The owner was informed that the city's code enforcement board would conduct a hearing. Id. The violations were not corrected and two weeks prior to the scheduled hearing, city officials posted notices on each apartment door directing residents to vacate the property. Id. The notices did not inform the tenants of any right to a hearing to challenge the condemnation decision. Id. The next day, several tenants requested a hearing. Id. The city continued its enforcement efforts and at the scheduled hearing, the board determined the building was in violation of city code. Id. at 1229. That same day, three former tenants filed a complaint in federal court. Id. An attorney for tenants asked that another hearing be scheduled so that tenants had an opportunity to address the board. Tenants received notice and a second hearing was scheduled. Id. The defendant building inspector moved for summary judgment on the § 1983 procedural due process claim based on qualified immunity and the motion was referred to a magistrate judge. Id. at 1230. The magistrate judge concluded that plaintiffs had not demonstrated that they had a clearly established right to notice of the initial code violations, the inspector was entitled to qualified immunity on the issue of pre-deprivation due process, but because the inspector did not provide the tenants with personal notice of their right to seek review of the condemnation decision, he was not entitled to qualified immunity as to the plaintiffs' claim of inadequate post-deprivation notice. Id. The defendant appealed the district court's order adopting the magistrate judge's report and recommendation-the sole issue on appeal was whether the defendant city official was entitled to qualified immunity as to the tenants' post-deprivation due process claim. Id. The Eleventh Circuit stated that "[w]hen exigent circumstances prompt an emergency eviction, contemporaneous pre-deprivation notice is required but a pre-deprivation hearing is not." Id. at 1237. Further, the Court stated that "contemporaneous" means that the tenants must receive notice of their right to challenge the condemnation decision when they are provided with the notice to vacate the building." Id. at 1237-38.
Here, AHE is the owner of the Building and has not alleged any occupancy interest, such as the plaintiff tenants in Grayden . Further, the Complaint does not allege that any tenants were evicted from the Building or had their occupancy interrupted. The commercial nature of the Building further distinguishes it from Grayden , where residents were evicted from their homes. Grayden informs, through dicta, what process is due under the scenario where residential tenants are evicted from their homes without notice of their opportunity to challenge the eviction decision. Grayden is inapplicable to the situation at hand.
AHE's remaining arguments regarding pre-deprivation procedural due process are similarly unavailing. The assertion that AHE's right to a hearing was terminated, not merely suspended, is contradicted by the fact that the Village forwarded AHE's request for a hearing to the County mere days after the alleged deprivation and that a hearing was subsequently scheduled. Accordingly, AHE has not sufficiently alleged a violation of pre-deprivation procedural due process here where the facts support finding that the Building Official acted pursuant to MDC Code and no tenants were in fact evicted from the premises.
*1334 b. Post-Deprivation Procedural Due Process
AHE also argues that it did not receive adequate post-deprivation procedural due process because the hearing was not scheduled at a meaningful time and in a meaningful manner. Specifically, AHE argues that because the hearing was scheduled only after the Complaint was filed and 136 days after the alleged deprivation it is not meaningful.
"Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Cafeteria Workers v. McElroy , 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge , 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting Morrissey v. Brewer , 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ). The Supreme Court has stated that the requirement of a hearing does not always require that the state provide a hearing prior to the initial deprivation. Parratt v. Taylor, 451 U.S. 527, 539-40, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled in part on other grounds . "[T]he necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." Id. at 539, 101 S.Ct. 1908. The opportunity to be heard must be granted at a meaningful time and in a meaningful manner. Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla. , 956 F.2d 1112, 1123 (11th Cir. 1992). Under the Due Process Clause, "the notice and hearing may be postponed until after the deprivation has occurred." Catron v. City of St. Petersburg , 658 F.3d 1260, 1266 (11th Cir. 2011) (citing Mathews , 424 U.S. at 319, 96 S.Ct. 893 ).
It is unclear what deprivation AHE suffered as a result of the posting of the Unsafe Building Notice for a period of less than twenty-four hours when neither AHE nor any of its tenants actually evacuated the Building.[8] In any event, the alleged threat of harm abated on October 31, 2017, when Naranjo relayed to Martinez the same message that the City Manager relayed the day before--the issue was resolved. The Village notified the County within days of AHE's request for a hearing, despite the valid confusion as to the need for a hearing when the issue had been resolved. This fact discredits AHE's argument that the delay in scheduling a hearing evidenced bad faith. Thus, the timing of the hearing-which may be wholly unnecessary-has no impact on AHE's perceived threat of deprivation and satisfies the requirement that it take place at a meaningful time in a meaningful manner. See Givens v. U.S. Railroad Retirement Bd. , 720 F.2d 196, 201 (D.C. Cir. 1983) (nineteen-month delay in adjudicating appeal of denial of railroad benefits did not violate due process where plaintiff offered no evidence of intentional delay). AHE fails to allege a violation of post-deprivation procedural due process.
2. Substantive Due Process
"Substantive due process is a doctrine that has been kept under tight reins, reserved for extraordinary circumstances."
*1335 Nix v. Franklin Cty. School Dist. , 311 F.3d 1373, 1379 (11th Cir. 2002). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver , 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (internal citation omitted). "[N]ot every wrong committed by a state actor rises to the level of a 'constitutional tort' sufficient to trigger a substantive due process violation." Lee v. Hutson , 810 F.2d 1030, 1032 (11th Cir. 1987). A government actor's conduct "will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003). "Even intentional wrongs seldom violate the Due Process Clause[.]" Maddox , 727 F.3d at 1119. And "[d]eterminations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor must be egregious-that is, shock the conscience-at the time the government actor made the decision ." Waddell , 329 F.3d at 1305 (emphasis in original).
The Village Defendants argue that AHE's substantive due process claim fails because the Complaint fails to identify a fundamental right that was infringed and because AHE has failed to allege any conduct that rises to the level of arbitrary or conscience-shocking. In opposition, AHE argues that Defendants interfered with: (1) AHE's rights to continued possession of the Building, (2) the tenants' rights to continued possession of their leasehold interests, (3) that Defendants placed AHE in a position to default under its mortgage, subject it to foreclosure and default interest, and (4) caused diminution in value and interference with AHE's relationships with its tenants-all of which AHE asserts are constitutionally-protected fundamental rights.
The Parties dispute whether the first prong of substantive due process analysis is met-alleging that a fundamental right was infringed. The Court need not address this point because AHE clearly fails to satisfy the second prong of substantive due process analysis-arbitrary or conscience-shocking behavior. Construing the Complaint in the light most favorable to AHE, allegations that Naranjo arbitrarily and capriciously issued notices of violation, included incorrect citations to relevant statutory provisions, and back-dated a notice[9] do not shock the conscience. At best, AHE puts forth facts alleging Naranjo was incompetent, not "conscience-shocking." AHE's claim premised upon a substantive due process violation fails in its entirety.
3. Eighth Amendment
AHE also alleges its Eighth Amendment right to be free from excessive fines was violated. Complaint, ¶ 62. The Eighth Amendment prohibits the imposition of excessive fines. The Excessive Fines Clause "limits the government's power to extract payments, whether in case or in kind, 'as punishment for some offense.' " Austin v. United States , 509 U.S. 602, 609-610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). However, AHE does not allege that it was fined. Any tangential argument that AHE has expended funds to replace the North Egress Door or its *1336 lock or that its mortgage or relationship with its tenants has been affected does not constitute an allegation that Defendants have violated the Eighth Amendment. Accordingly, AHE fails to state a claim under the Eighth Amendment.
4. Qualified Immunity
Naranjo also states he is entitled to qualified immunity. AHE argues that the Court should not consider qualified immunity at the motion to dismiss stage, and that the lack of exigent circumstances precludes Naranjo's entitlement to the affirmative defense of qualified immunity.
"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson , 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald , 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ). Entitlement to qualified immunity first requires that a public official establish that he or she was engaged in a "discretionary duty." Mercado v. City of Orlando , 407 F.3d 1152, 1156 (11th Cir. 2005). Once it has been established that the official was engaged in a discretionary duty, the burden shifts to the plaintiff to establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." Youmans v. Gagnon , 626 F.3d 557, 562 (11th Cir. 2010). "This objective-reasonableness test provides qualified immunity protection to 'all but the plainly incompetent or those who knowingly violate the law.' " Soto v. City of North Miami , No. 17-22090-Civ-Scola, 2017 WL 4685301, *6 (S.D. Fla. Oct. 17, 2017) (quoting Kirkland v. Mosaic Fertilizer, LLC, No. 8:14-CV-1715, 2015 WL 4042100, at *2 (M.D. Fla. July 1, 2015). "The protection of qualified immunity applies regardless of whether the government official's error is a 'mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' " Pearson v. Callahan , 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Groh v. Ramirez , 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) ). A defendant pleading qualified immunity is entitled to dismissal "unless the plaintiff's allegations state a claim of violation of clearly established law." Cottone v. Jenne , 326 F.3d 1352, 1357 (11th Cir. 2003). Generally, courts are urged to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation-including on a motion to dismiss. See Andrade v. Miami Dade Cty. , No. 09-23220-CIV, 2010 WL 4069128 (S.D. Fla. Sep. 30, 2010). This two-pronged analysis may be done in whatever order deemed most appropriate. Pearson v. Callahan , 555 U.S. 223, 241, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).[10]
AHE does not dispute that Naranjo was acting within the scope of his discretionary duties. Thus, the burden shifts to AHE to demonstrate that Naranjo committed a constitutional violation and *1337 violated clearly established law. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " Willingham v. Loughnan , 321 F.3d 1299, 1301 (11th Cir. 2003) (quoting Anderson v. Creighton , 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ). "The unlawfulness must have been apparent." Id. "In many-if not most-instances, the apparency of an unlawful action will be established by (if it can be established at all) preexisting case law which is sufficiently similar in facts to the facts confronting an [official], such that we can say every objectively reasonable [official] would have been on 'fair notice' that the behavior violated a constitutional right." Id. The absence of materially similar facts in preexisting case law is not always necessary to provide an official with fair warning of unlawful behavior-general statements of law may be capable of providing fair warning of unconstitutional behavior. Hope v. Pelzer , 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). But it is a rare scenario where fact-specific precedent is unnecessary. See Rodriguez v. Farrell , 280 F.3d 1341, 1350 n. 18 (11th Cir. 2002) ("We very occasionally encounter the exceptional case in which a defendant officer's acts are so egregious that preexisting, fact-specific precedent was not necessary to give clear warning to every reasonable (by which we, in the qualified immunity context, always mean every objectively reasonable) officer that what the defendant officer was doing must be 'unreasonable' within the [Constitution].")
AHE argues that issues of fact preclude the grant of qualified immunity.[11] Specifically, AHE argues that Naranjo pretextually declared exigent circumstances and that it is clearly established by the Eleventh Circuit's decision in Grayden as to what notice a reasonable building official must provide when condemning a building under purportedly exigent circumstances. However, as discussed above, the holding in Grayden is narrow and the facts alleged by the tenants there are also distinguishable. Accordingly, AHE has failed to offer persuasive authority holding that all reasonable building officials would know that Naranjo's actions violated federal law. See generally Griffin Indus., Inc. v. Irvin , 496 F.3d 1189, 1209 (11th Cir. 2007) ("When fact-specific precedents are said to have established the law, a case that is fairly distinguishable from the circumstances facing a government official cannot clearly establish the law for the circumstances facing that government official; so qualified immunity applies.") )
AHE makes much of the allegations of Naranjo's willful misconduct such as the alleged intentional and willful falsification of the notice by backdating it to October 13, 2017, and utilizing a "fake" case number. See Response (ECF No. 26) at 15. However, "[e]vidence concerning the defendant's subjective intent is simply irrelevant to th[e] [qualified immunity' defense." Crawford-El v. Britton , 523 U.S. 574, 606, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (internal citation omitted). Bare allegations of malice cannot overcome the defense of qualified immunity and, of course, would not suffice to establish a *1338 constitutional claim. Id. at 588, 118 S.Ct. 1584.
The allegations in the Complaint establish that a reasonable building official objectively could have believed that exigent circumstances existed warranting the declaration of the Building unsafe. AHE admits that the door lock was damaged such that it appeared to be locked at times-a known fire hazard. Accepting AHE's allegations as true, and despite AHE's bare assertion that Naranjo acted willfully, nothing in the Complaint raises the specter of bad faith in declaring the Building unsafe and failing to provide appropriate notice. Accordingly, Naranjo is entitled to qualified immunity.
5. Municipal Liability
Section 1983 provides a private cause of action against a government for its unconstitutional actions. Vila v. Miami-Dade Cty. , 65 F.Supp.3d 1371, 1379 (S.D. Fla. 2014) (citing Monell v. New York City Dep't of Social Services , 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ). However, "[t]he Supreme Court has placed strict limitations on municipal liability under section 1983." Gold v. City of Miami , 151 F.3d 1346, 1350 (11th Cir. 1998). A local governmental entity cannot be held liable under § 1983 using a respondeat superior theory for injuries caused solely by its employees. Monell , 436 U.S. at 694, 98 S.Ct. 2018. In order to impose § 1983 liability on a local governmental entity, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the [local governmental entity] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown , 392 F.3d 1283, 1289 (11th Cir. 2004) (citing City of Canton, Ohio v. Harris , 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ). "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the local government may be held liable under § 1983." City of Canton , 489 U.S. at 385, 109 S.Ct. 1197 (internal citation omitted). In order to establish that such a policy exists, the party must prove either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through repeated acts of a final policymaker for the county." Grech v. Clayton Cty. Ga. , 335 F.3d 1326, 1329 (11th Cir. 2003).
AHE alleges that the Village is subject to liability because it has (1) failed to provide requisite training and oversight to Naranjo; (2) an informal policy of permitting Naranjo to issue verbal and non-verbal citations and violations based upon his subjective opinion pursuant to Miami-Dade County Code and without an evidentiary basis; and (3) an informal policy of permitting Naranjo to issue citations and violations without providing the property owner with an opportunity to challenge such violation. Complaint, ¶¶ 87-90. AHE also alleges that the County is responsible for the actions of Naranjo because Naranjo acted pursuant to MDC Code.
a. Municipal Liability: Unofficial Policy
"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton , 117 F.3d 488, 489 (11th Cir. 1997) (citing Brown v. City of Fort Lauderdale , 923 F.2d 1474, 1479-80 (11th Cir. 1991) ). A custom "is a practice that is so settled and permanent that it takes on the force of law." Id.
In Pembaur v. City of Cincinnati , the Supreme Court stated that
a government frequently chooses a course of action tailored to a particular *1339 situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.
475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). But municipal liability attaches "only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Id. "Whether an official has final policymaking authority is a question of state law, including valid local ordinances and regulations." Eisenberg v. City of Miami Beach , No. 13-23620-CIV-ALTONAGA/O'Sullivan, 2014 WL 12513594, *6 (S.D. Fla. Dec. 16, 2014). A plaintiff "must demonstrate "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Board of Cty. Com'rs of Bryan Cty., Okl. v. Brown , 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "Rigorous standards of culpability and causation must be applied to ensure that the [local governmental entity] is not held liable solely for the actions of its employee." Id. at 405, 117 S.Ct. 1382.
AHE fails to cite any state or local statute or ordinance indicating that Naranjo is indeed a final decision maker in this context such that Village or County should be held liable. See Eisenberg , 2014 WL 12513594, *8 (granting summary judgment in favor of municipality where plaintiff could not prove that the City Fire Marshal was a final policymaker whose decisions were not subject to meaningful administrative review). AHE's conclusory statement that Naranjo was the final decisionmaker is also belied by the existence of the Unsafe Structures Board, which reviews decisions such as the one at issue here. See O'Hare v. Town of Gulf Stream , No. 13-cv-81053-MIDDLEBROOKS, 2015 WL 12977393 (S.D. Fla. June 22, 2015) (holding that the complaint failed to allege facts demonstrating that defendant town manager was the decision maker with final authority where town manager was vested with management of all town functions with oversight provided by town commission). Further, the discretion afforded Naranjo in making his determinations does not give rise to municipal liability. See Pembaur , 475 U.S. at 481-82, 106 S.Ct. 1292 ("[t]he fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."). Thus, AHE's allegations are insufficient to withstand dismissal of the claims against the Village and the County.
b. Municipal Liability: Failure to Train
AHE also generally and conclusorily alleges that the Village and County failed to provide requisite training to Naranjo. A local governmental entity's "liability flowing from a policy or custom 'may include a failure to provide adequate training if the deficiency evidences a deliberate indifference to the rights of its inhabitants.' " Rivas v. Figueroa , No. 11-23195-Civ., 2012 WL 1378161, *2 (S.D. Fla. Apr. 20, 2012) (quoting Lewis v. City of W. Palm Beach, Fla. , 561 F.3d 1288, 1293 (11th Cir. 2009) ). "The Supreme Court has cautioned 'that there are limited circumstances in which an allegation of a failure to train can be the basis for liability under § 1983.' "
*1340 Whitaker v. Miami-Dade Cty. , 126 F.Supp.3d 1313, 1323 (S.D. Fla. 2015) (quoting City of Canton , 489 U.S. at 389, 109 S.Ct. 1197 ) ). A local governmental entity's failure to train must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Connick v. Thompson , 563 U.S. 51, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (quoting Canton , 489 U.S. at 388, 109 S.Ct. 1197 ) ). " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of Cty. Com'rs of Bryan Cty., Okl., 520 U.S. 397 at 409, 117 S.Ct. 1382, 137 L.Ed.2d 626.
Because it is rare for a local governmental entity to have an express written or oral policy of inadequately training its employees, the Supreme Court has elaborated that a plaintiff may prove the existence of such a policy by showing that a failure to train evidenced a "deliberate indifference." See Gold v. City of Miami , 151 F.3d at 1350. "Municipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." City of Canton , 489 U.S. at 389, 109 S.Ct. 1197 (internal quotation omitted). In order to establish a "deliberate indifference," a plaintiff must present evidence of the local governmental entity's knowledge of a need to train and/or supervise with respect to a particular area and that the local governmental entity made the deliberate choice not to take action. See Gold v. City of Miami , 151 F.3d at 1350. As such, notice is a necessary requirement. See Wright v. Sheppard , 919 F.2d 665 (11th Cir. 1990). The Court of Appeals for the Eleventh Circuit has stated that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; [and (3) ] conduct that is more than mere negligence." Williams v. DeKalb Cty. , 327 Fed.Appx. 156, 160 (11th Cir. 2009) (quoting McElligott v. Foley , 182 F.3d 1248, 1255 (11th Cir. 1999) ).
Here, AHE fails to allege that the Village or County failed to train Naranjo such that it evidenced a "deliberate indifference." There is no inference that the Village and County were on notice of a need to train Naranjo as to the assessment of what constitutes an unsafe structure or the notice requirements of Section 8-5. Viewing the allegations in the light most favorable to AHE, the allegations against Naranjo would amount to mere negligence at best-and accordingly do not and cannot support a claim against either the Village or County for a failure to train.
B. State Law Claims
Defendants also move to dismiss AHE's state law claims for writ of mandamus and declaratory judgment. AHE seeks a writ directing Defendants to "comply with due process and hearing requirements of § 8-5 MDCC by scheduling a public hearing with the appropriate MDC board to hear the legal merits" of the unsafe structure determination." Defendants argue that AHE's petition for writ of mandamus should be dismissed as moot because a hearing was scheduled. As to the claim for declaratory relief, Defendants argue[12] that dismissal is warranted due to AHE's failure to exhaust its administrative remedies.
In light of the dismissal of all of AHE's federal claims, the Court declines to exercise supplemental jurisdiction over *1341 its remaining state law claims for writ of mandamus and declaratory judgment. Accordingly, Counts I and II are remanded to state court. See Myers v. Cent. Fla. Invs., Inc. , 592 F.3d 1201, 1226-27 (11th Cir. 2010) ("federal district courts in removal cases must remand, rather than dismiss, state claims over which they decline to exercise supplemental jurisdiction").
IV. CONCLUSION
For the foregoing reasons, it is ORDERED AND ADJUDGED that the Motions to Dismiss AHE's Complaint (ECF Nos. 6 and 9) are GRANTED as set forth above. To the extent Defendants seek a more definite statement, that request is DENIED and AHE's request for leave to amend the Complaint is DENIED as amendment would be futile.[13] To the extent not addressed herein,[14] all other pending motions are DENIED AS MOOT.
DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of June, 2018.

Defendant Miami-Dade County (the "County") filed its Motion to Dismiss (the "County's Motion") (ECF No. 6) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed a Response (ECF No. 17) and the County filed a Reply (ECF No. 27). Defendants the Village of Miami Shores (the "Village") and Ismael Naranjo ("Naranjo") (collectively, the "Village Defendants") also filed a Motion to Dismiss ("Village Defendants' Motion to Dismiss") (ECF No 9). Plaintiff filed a Response (ECF No. 26) and the Village Defendants filed a Reply (ECF No. 31).

The following background facts are taken from AHE's Complaint (ECF No. 1-1) and accepted as true for purposes of ruling on these Motions to Dismiss.

AHE alleges that on the morning of October 31, 2017, it partially relied upon Naranjo's letter to the bank as a demand that AHE's tenants immediately evacuate the Building. However, it is unlikely that AHE was in receipt of this letter on the morning of October 31, 2017 because Naranjo sent the letter to the bank via the U.S. Postal Service on October 30, 2017.

AHE asks the Court to ignore the fact that the hearing was scheduled because this information is beyond the four corners of the Complaint. This fact is included for context but does not form the basis for any of the conclusions set forth infra .

In the Complaint AHE mistakenly identifies two counts as Count IV. See Complaint at 23, 25.

Defendants move to dismiss the Complaint because it is a "shotgun" pleading. However, because dismissal is appropriate on substantive grounds, addressing the poor form of the pleadings-which are "replete with vague and cursory allegations"-is unnecessary. See Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla. , 63 F.3d 1030, 1046 n. 51 (11th Cir. 1995). Indeed, AHE concedes this point by failing to respond to this argument in its Response (ECF No. 26).

AHE's arguments regarding the lack of an emergency are untethered from the MDC Code and accordingly unpersuasive. For example, AHE argues that the swift resolution of the problem by inserting a piece of cardboard into the North Egress Door lock is evidence of the lack of emergency. This fact has no bearing on whether emergency action was justified pursuant to the MDC Code. Indeed, the facts alleged indicate that the North Egress Door continued to remain susceptible to jamming until the lock was effectively disabled by virtue of the cardboard stop.

The statement from the City Manager on October 30, 2017-the same day that Naranjo posted the Unsafe Building Notice-that the issue had been resolved by virtue of the cardboard stop further undermines AHE's argument that on October 31, 2017, it was under the impression that an evacuation was necessary.

AHE attempts to portray the date contained in the Unsafe Building Notice (ECF No. 1-1, Ex. C) as evidence of Naranjo's unscrupulous behavior. However, AHE states that on October 13, 2017, Naranjo "communicated his adjudication to AHE of the 'locked' door and found AHE in violation of certain unidentified codes and ordinances." Complaint, ¶ 13. This is not at odds with the Unsafe Building Notice wherein Naranjo allegedly states that he rendered the declaration on October 13, 2017. Id. , ¶ 27.

In Saucier v. Katz , 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court mandated a two-step inquiry in determining whether qualified immunity is available, but it was subsequently receded by the Supreme Court in Pearson v. Callahan , 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). In Pearson , the Supreme Court stated "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236, 129 S.Ct. 808. But the Court also noted that the two-step inquiry, while no longer required, may be beneficial. Id.

AHE argues that the consideration of qualified immunity is inappropriate at this stage of the proceedings. This is not so. "[B]ecause '[t]he entitlement is an immunity from suit rather than a mere defense to liability,' we repeatedly have stressed the importance of resolving immunity questions at the earliest possible state in litigation." Hunter v. Bryant , 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (internal citations omitted, emphasis in original).

The County also argues that AHE has failed to allege that the County committed any illegal wrongdoings.

See Patel v. Georgia Dep't BHDD , 485 Fed.Appx. 982, 983 (11th Cir. 2012) (affirming district court's order denying plaintiff's motion for leave to amend and granting defendant's motion to dismiss without prejudice).

Defendant Naranjo filed a Motion for Rule 11 Sanctions (ECF No. 39). AHE's counsel filed a woefully deficient Complaint and subsequent pleadings that bear similar resemblance in their disjunctive form, unsupported reasoning, hyperbole, and tedious conflation of legal issues and arguments. Despite these professional failings, this conduct does not rise to the level of sanctionable conduct. Accordingly, upon consideration of the motion, the response and reply thereto, the pertinent portions of the record, and being otherwise fully advised in the premises, the Motion for Rule 11 Sanctions (ECF No. 39) is hereby DENIED.